UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 14-3882

MARK BALSAM, et al.,

Plaintiffs-Appellants,

v.

KIM GUADAGNO,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 14-1388

BRIEF IN OPPOSITION TO THE APPEAL ON BEHALF OF DEFENDANT-APPELLEE

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 93
Trenton, New Jersey 08625
(609) 984-4863 (Phone)
ERIC.PASTERNACK@DOL.LPS.STATE.NJ.US
Attorney for Defendant-Appellee

Donna Kelly
Lisa A. Puglsi
Assistant Attorneys General
     Of Counsel

Eric S. Pasternack
Deputy Attorney General
     On the Brief

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

COUNTERSTATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION...................................................................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW ...................1

COUNTERSTATEMENT OF RELATED CASES AND PROCEEDINGS ...........2

COUNTERSTATEMENT OF THE CASE...............................................................2

COUNTERSTATEMENT OF THE FACTS ............................................................3

SUMMARY OF THE ARGUMENT ......................................................................5

ARGUMENT ..........................................................................................................6

  POINT I

      APPELLANTS DO NOT HAVE A CONSTITUTIONAL RIGHT UNDER THE FIRST AMENDMENT TO VOTE IN PRIMARY ELECTIONS; AND THEREFORE, THIS COURT SHOULD AFFIRM. ......................................6

  POINT II

      APPELLANTS' EQUAL PROTECTION CLAIM FAILS BECAUSE APPELLANTS ARE NEITHER MEMBERS OF A SUSPECT CLASS NOR DO THEY ENJOY A FUNDAMENTAL RIGHT TO PARTICIPATE IN PRIMARY ELECTIONS ......................................................................16

  POINT III

      THE ELEVENTH AMENDMENT PROHIBITS APPELLANTS' STATE LAW CLAIMS IN THEIR ENTIRETY. ......................................................18

CONCLUSION ....................................................................................................21

# TABLE OF AUTHORITIES

PAGE

## Cases

*Alden v. Maine*,
  527 U.S. 706 (1999) ...........................................................................19

*Allegheny General Hospital v. NLRB*,
  608 F.2d 965 (3d Cir. 1979) ...............................................................18

*American Party of Texas v. White*,
  415 U.S. 767 (1974) ............................................................... 8, 11, 17

*Balsam v. Guadagno*,
  2014 U.S. Dist. LEXIS 112709 (D.N.J. 2014).................................... 2, 5, 13, 14

*Brown v. Bd. of Educ.*,
  347 U.S. 483 (1954) ...........................................................................18

*Burdick v. Takushi*,
  504 U.S. 428 (1992) .............................................................................7

*California Democratic Party v. Jones*,
  530 U.S. 567 (2000) ............................................................. 6, 8, 10, 11

*Cleburne v. Cleburne Living Center, Inc.*,
  473 U.S. 432 (1985) ...........................................................................16

*Clingman v. Beaver*,
  544 U.S. 581 (2005) ................................................................... passim

*Connelly v. Steel Valley Sch. Dist.*,
  706 F.3d 209 (3d Cir. 2013) ...............................................................16

*Consumer Party v. Davis*,
  633 F. Supp. 877 (E.D. Pa. 1986)....................................................8, 17

*Council of Alternative Political Parties v. Div. of Elections*,
  781 A.2d 1041 (N.J. App. Div. 2001) .................................................15

*Council of Alternative Political Parties v. Hooks*,
    179 F.3d 64 (3d Cir. 1999) ...................................................... 4, 5, 8, 15

*Crawford v. Marion County Election Bd.*,
    553 U.S. 181 (2008) ....................................................................9

*Ex Parte Young*,
    209 U.S. 123 (1908) ..................................................................19

*Figueroa v. City of Camden*,
    580 F. Supp. 2d 390 (D.N.J. 2008)...........................................20

*Harper v. Virginia State Board of Elections*,
    383 U.S. 663 (1966) ............................................................ 17, 18

*Illinois Bd. of Elections v. Socialist Workers Party*,
    440 U.S. 173 (1979) ....................................................................7

*Lesniak v. Budzash*,
    626 A.2d 1073 (N.J. 1993) ........................................................15

*Major Tours, Inc. v. Colorel*,
    720. F. Supp. 2d 587 (D.N.J. 2010)...........................................20

*Maldonado v. Houstoun*,
    157 F.3d 179 (3d Cir. 1998) ......................................................16

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986) ....................................................................7

*Nader v. Schaffer*,
    417 F. Supp. 837 (D. Conn. 1976) ..................................... passim

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ....................................................................20

*Plessy v. Ferguson*,
    163 U.S. 537 (1896) ..................................................................18

*Ray v. Blair*,
   343 U.S. 214, 221 (1952) ...................................................................15

*Raygor v. Regents of University of Minnesota*,
   534 U.S. 533 (2002) ..........................................................................20

*Regents of the Univ. of California v. Doe*,
   519 U.S. 425 (1997) ...................................................................... 19, 20

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ...................................................................... 13, 14

*Storer v. Brown*,
   415 U.S. 724 (1974) ..........................................................................12

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997) ........................................................................8, 9

*Trinsey v. Pennsylvania*,
   941 F.2d 224 (3d Cir. 1991) ............................................................7, 13

*United States v. Classic*,
   313 U.S. 299, 311 (1941) ............................................................ 7, 12, 13

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008) ..........................................................................11

*Will v. Michigan Dep't of State Police*,
   491 U.S. 58 (1989) ............................................................................19

*Ziskis v. Symington*,
   47 F.3d 1004 (9th Cir. 1995) ..............................................................6

## Statutes

28 U.S.C. § 1367 ...................................................................... 2, 5, 20

42 U.S.C. § 1983 ........................................................................2, 19

Ariz. Rev. Stat. Ann. § 16-241(a) ................................................................7

Colo. Rev. Stat. Ann. § 1-3-101................................................................7

Conn. Gen. Stat. Ann. § 9-431................................................................7

D.C. Code Ann. § 1-1001.09(g)(1) ................................................................7

Del. Code Ann., Tit. 15 § 3110................................................................7

Del. Code Ann., Tit. 15, § 3161................................................................7

Fla. Stat. § 101.021 ................................................................7

Iowa Code Ann. §§ 43.38, 43.42 ................................................................7

Kan. Stat. Ann. § 25-3301 ................................................................7

Ky. Rev. Stat. Ann. § 116.055 ................................................................7

La. Rev. Stat. Ann. § 18:521................................................................7

N.J. Stat Ann. §§ 10:6-1 to -2 ................................................................2

N.J. Stat. Ann. § 19:1-1................................................................3

N.J. Stat. Ann. § 19:13-5................................................................5

N.J. Stat. Ann. § 19:23-14................................................................4

N.J. Stat. Ann. § 19:23-45................................................................ passim

N.J. Stat. Ann. § 19:23-8................................................................4

N.J. Stat. Ann. § 19:45-1................................................................2, 4

N.J. Stat. Ann. § 45:1-55................................................................1

N.J. Stat. Ann. §§ 19:1-1 to 19:63-28................................................................3

N.J. Stat. Ann. §§ 19:13-3 to -13 ..............................................................4

N.M. Stat. Ann. § 1-12-7.2 ......................................................................7

N.Y. Elec. Law Ann. § 5-304 ...................................................................7

Okla. Stat., Tit. 26, § 1-104.....................................................................7

Pa. Stat. Ann., Tit. 25, § 292...................................................................7

R.I. Gen. Laws §§ 17-9.1-24, 17-15-24...................................................7

S.D. Codified Laws § 12-6-26 .................................................................7

Wyo. Stat. Ann. § 22-5-212 .....................................................................7

## Treatises

Charles E. Borden, *Primary Elections*, 38 Harv. J. on Legis. 263 (2001) ...............7

## Constitutional Provisions

U.S. Const. amend. XI ...........................................................................19

## COUNTERSTATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

On August 14, 2014, the United States District Court for the District of New Jersey entered an Order and Opinion granting defendant-appellee's motion to dismiss. (PACER, Civil Action No. 14-1388, Docket Entry Nos. 25, 26). On September 9, 2014, plaintiffs-appellants filed a notice of appeal. (*Id.* at Docket Entry Nos. 27, 28). This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the District Court correctly determine that N.J. Stat. Ann. § 19:23-45 is a reasonable, nondiscriminatory regulation of the electoral process under the First Amendment because it is supported by the State's important regulatory interests in protecting the integrity of primary elections and does not severely burden the associational or voting rights of unaffiliated voters?

2.    Did the District Court correctly determine that N.J. Stat. Ann. § 45:1-55 is fully consistent with the Equal Protection Clause because appellants are neither members of a suspect class nor enjoy a fundamental right to participate in primary elections?

1

3.    Did the District Court correctly determine that appellants' state law claims, which were brought pursuant to 28 U.S.C. § 1367, are barred by Eleventh Amendment immunity?

## COUNTERSTATEMENT OF RELATED CASES AND PROCEEDINGS

Appellee is not aware of any related cases or proceedings.

## COUNTERSTATEMENT OF THE CASE

On March 5, 2014, appellants Mark Balsam, Charles Donahue, Hans Henkes, Rebecca Feldman, Jaime Martinez, William Conger, Tia Williams, the Independent Voter Project, and the Committee for a Unified Independent Party, Inc., filed this lawsuit against Secretary of State Kim Guadagno, in her official capacity, seeking declaratory and injunctive relief pursuant 42 U.S.C. § 1983 and N.J. Stat Ann. §§ 10:6-1 to -2. (PACER, Civil Action No. 14-1388, Docket Entry No. 1). In particular, appellants seek both a declaration that the use of a "closed" primary infringes upon the rights of unaffiliated voters to participate in the electoral process and an order requiring the implementation of a "Constitutional" non-presidential primary election system. (*Id.* at Docket Entry No. 1, ¶ 78). Appellants also allege that N.J. Stat. Ann. § 19:45-1 violates the New Jersey Constitution by appropriating public funds to cover the expenses that result from primary elections. (*Id.* at Docket Entry No. 1, ¶¶ 67-72).

On May 9, 2014, appellee filed a motion to dismiss. (*Id.* at Docket Entry No. 11). In response, appellants filed a brief in opposition on July 3, 2014, (*Id.* at Docket Entry No. 16), and appellee filed a reply brief on August 12, 2014. (*Id.* at Docket Entry No. 24).

On August 14, 2014, the District Court entered an Order and Opinion granting appellee's Motion to Dismiss. (*Id.* at Docket Entry Nos. 25, 26). Appellants then filed a Notice of Appeal on September 9, 2014. (*Id.* at Docket Entry Nos. 27, 28).

## COUNTERSTATEMENT OF THE FACTS

The Legislature has created a comprehensive statutory scheme governing elections in the State of New Jersey. *See* N.J. Stat. Ann. §§ 19:1-1 to 19:63-28. At the "general election," which is held on the first Tuesday after the first Monday in November, voters "elect persons to fill public office." N.J. Stat. Ann. § 19:1-1. To get on the ballot for the general election, candidates have two options: the primary election process or the petition process.

Under the first route, at a primary election, "members of a political party . . . nominate candidates to be voted for at the general election[.]" *Id.* New Jersey law defines a "political party" as any party that garners at least 10% of the votes cast in the last general election for the office of the member of the General Assembly. *Id.* The process to obtain placement on a primary election ballot begins with the filing

of a nominating petition, which a candidate must file at least fifty-four days before the primary election. N.J. Stat. Ann. § 19:23-14. If a candidate satisfies the statutory requirements by obtaining the requisite number of signatures, which varies by the office sought, the candidate's name will appear on the June primary election ballot. N.J. Stat. Ann. § 19:23-8.

To be eligible to vote in a primary, a voter must be deemed a member of the party, in which he or she seeks to vote, fifty-five days before the election, unless the voter is newly registered or the voter has not previously voted in primary election. N.J. Stat. Ann. § 19:23-45. The expense of conducting a primary election shall, according to N.J. Stat. Ann. § 19:45-1, be borne by the State or its political subdivisions.

The second route is the "petition" process, which allows candidates unaffiliated with a political party to secure placement on the general election ballot. N.J. Stat. Ann. §§ 19:13-3 to -13. The petition process allows unaffiliated candidates to "bypass the primary election and proceed directly to the general election" upon the submission of a petition bearing the requisite number of signatures. *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999). Although petitions are generally subject to the same statutory requirements as the ones applicable to affiliated candidates, there are a few differences, *id.* at 68, which  in effect "lower the ballot access hurdles" for

candidates using the petition process. *Balsam v. Guadagno*, Civil Action No. 14-1388, 2014 U.S. Dist. LEXIS 112709, at *3-4 (D.N.J. 2014) (citing *Council of Alt. Political Parties*, 179 F.3d at 79). For example, in contrast to the requirements governing the primary process, unaffiliated candidates may solicit signatures from all registered voters, regardless of their political affiliation. N.J. Stat. Ann. § 19:13-5.

## SUMMARY OF THE ARGUMENT

N.J. Stat. Ann. § 19:23-45 fully comports with the Constitution and advances the State's interests in in protecting the integrity of the electoral process. Therefore, the statute, as a reasonable and nondiscriminatory regulation, passes constitutional muster because appellants do not enjoy a fundamental right to participate in primary elections, even when those elections are an integral part of the electoral process. The statute is, moreover, fully consistent with the Equal Protection Clause because appellants are neither members of a suspect class nor do they enjoy a fundamental right to vote in primary elections.

Finally, appellants' state law claims, which were brought pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367, are barred by Eleventh Amendment immunity.

## ARGUMENT

## POINT I

## APPELLANTS DO NOT HAVE A CONSTITUTIONAL RIGHT UNDER THE FIRST AMENDMENT TO VOTE IN PRIMARY ELECTIONS; AND THEREFORE, THIS COURT SHOULD AFFIRM.

Appellants suggest the State's closed primary election scheme deprives them of their fundamental right to cast a meaningful vote. (Ab17-Ab40). However, neither this court nor the Supreme Court has recognized that unaffiliated voters have a fundamental right to participate in primary elections even when those elections are an integral part of the electoral process. In fact, the Supreme Court rejected this very argument in *California Democratic Party v. Jones*, 530 U.S. 567, 573 n.5 (2000). And it likewise found that a closed primary system, much like the one at issue here, was constitutional in *Nader v. Schaffer*, 417 F. Supp. 837 (D. Conn.), *summarily aff'd*, 429 U.S. 989 (1976). *See also Ziskis v. Symington*, 47 F.3d 1004, 1006 (9th Cir. 1995) (finding that a requirement that primary voters affirmatively join a party before being allowed to vote in its primary is constitutional). Therefore, this court should affirm because the relief appellants seek -- i.e., the invalidation of the State's closed primary system -- would, if granted, contravene these precedents and uproot one of the hallmarks of our

electoral system, the partisan primary, contrary to the judgment of the Legislature that N.J. Stat. Ann. § 19:23-45 advances the State's legitimate interests.[1]

Such relief would, moreover, be incompatible with the discretion afforded to the states in the Constitution to determine the manner in which nominees for office are selected. *United States v. Classic*, 313 U.S. 299, 311 (1941); *Trinsey v. Pennsylvania*, 941 F.2d 224, 234 (3d Cir. 1991). While appellants dispute that the State may legitimately insist on the use of partisan primaries, (Ab13-Ab14), their position is at odds with Supreme Court precedent. "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). However, "[i]t does not follow . . . that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id.* (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986)). "States have a major role to play in structuring and

---

[1]    Just as the Supreme Court recognized in *Clingman v. Beaver*, 544 U.S. 581, 586 n.1 (2005), a decision here invalidating the State's primary system would implicate the laws of numerous states that feature similar schemes. *See* Ariz. Rev. Stat. Ann. § 16-241(a); Colo. Rev. Stat. Ann. § 1-3-101; Conn. Gen. Stat. Ann. § 9-431; Del. Code Ann., Tit. 15 § 3110; D.C. Code Ann. § 1-1001.09(g)(1); Del. Code Ann., Tit. 15, § 3161; Fla. Stat. § 101.021; Iowa Code Ann. §§ 43.38, 43.42; Kan. Stat. Ann. § 25-3301; Ky. Rev. Stat. Ann. § 116.055; La. Rev. Stat. Ann. § 18:521; N.M. Stat. Ann. § 1-12-7.2; N.Y. Elec. Law Ann. § 5-304; Okla. Stat., Tit. 26, § 1-104; Pa. Stat. Ann., Tit. 25, § 292; R.I. Gen. Laws §§ 17-9.1-24, 17-15-24; S.D. Codified Laws § 12-6-26; Wyo. Stat. Ann. § 22-5-212. *See also* Charles E. Borden, *Primary Elections*, 38 Harv. J. on Legis. 263, 274 (2001) (recognizing the closed primary as the most common form of primary).

monitoring the election process, including primaries," *Jones*, 530 U.S. at 572, "to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). And to that end, the Supreme Court has decreed that it is "too plain for argument" that a State may mandate the use of the primary format for selecting party nominees "to assure that intraparty competition is resolved in a democratic fashion." *American Party of Texas v. White*, 415 U.S. 767, 781 (1974). *See also Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 75 (3d Cir. 1999) (quoting *Timmons*, 520 U.S. at 367) ("states have broad power to enact reasonable election codes that 'may, in practice, favor the traditional two-party system'"); *Consumer Party v. Davis*, 633 F. Supp. 877, 888 (E.D. Pa. 1986) ("There is no constitutional right to primary participation.").

Nevertheless, even with the Supreme Court having approved the use of the partisan primary format, *American Party of Texas*, 415 U.S. at 781, appellants suggest that the District Court should have assessed N.J. Stat. Ann. § 19:23-45 by balancing the interests of unaffiliated voters against the State's regulatory interests in protecting the integrity of the electoral process and found the statute unconstitutional. (Ab41).

However, "[t]here must be more than a minimal infringement on the rights to vote and of association . . . before strict judicial review is warranted." *Nader*, 417 F. Supp. at 849. A regulation that imposes a severe burden on associational

rights or voting rights must be narrowly tailored and serve a compelling interest. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). But when a regulation imposes a lesser burden, as is the case here, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Clingman v. Beaver*, 544 U.S. 581, 592 (2005) (quoting *Timmons*, 520 U.S. at 358). Otherwise, "ordinary and widespread" regulations of the electoral process would be subject to strict scrutiny, thereby "hamper[ing] the ability of the States to run efficient and equitable elections, and compel[ling] federal courts to rewrite state electoral codes." *Id.* at 593. "The Constitution does not require that result, for it is beyond question 'that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots . . . .'" *Id.* (quoting *Timmons*, 520 U.S. at 358). "Thus, the first step is to decide whether a challenged law severely burdens the right to vote." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 205 (2008) (citing *Clingman*, 544 U.S. at 591, 593-97) (Scalia, J., concurring). At the outset then, a burden must be identified. *Id.*

While appellants argue that unaffiliated voters possess a fundamental right to vote in primary elections, which they claim N.J. Stat. Ann. § 19:23-45 burdens, (Ab19-Ab21), the Supreme Court rejected this very argument in *Jones*. In that case, the Supreme Court invalidated Proposition 198, which the voters of California had adopted to change California's electoral system from a closed

primary[2] to a blanket primary. *Jones*, 530 U.S. at 570, 582-86. The Supreme Court

reasoned that Proposition 198 placed a "severe and unnecessary" burden on the

associational rights of the political parties in California by forcing them to

associate with voters who do not share the party's beliefs at the "crucial juncture"

when "party members traditionally find their collective voice and select their

spokesman." *Id.* at 586 (citing *Tashjian v. Republican Party*, 479 U.S. 208, 216

(1986))..

In a dissenting opinion, Justice Stevens posited that unaffiliated voters may

have a fundamental right "to cast a meaningful vote for the candidate of their

choice." *Id.* at 601 (Stevens, J., dissenting). But in response, the Majority explained

that "selecting a candidate is quite different from voting for the candidate of one's

choice. If the 'fundamental right' to cast a meaningful vote were really at issue in

this context, Proposition 198 would not only be constitutionally permissible but

constitutionally required, which no one believes." *Id.* at 573 n.5. This language

would thus appear to dispel any suggestion that a closed primary system invades a

fundamental right to vote.[3]

---

[2]    In a closed primary, each voter receives a ballot limited to the candidates of
his or her own party. *Id.* Meanwhile, in a blanket primary, all persons entitled to
vote have the right to vote for any candidate regardless of the candidate's political
affiliation.

[3]    As one commentator has explained, the "closed primary most clearly
survives the court's decision" in *California Democratic Party*. Charles E. Borden,
*Primary Elections*, 38 Harv. J. on Legis. 263, 274 (2001).

Even now, appellants cannot reconcile their claim with the Supreme Court's pronouncement in *Jones* that unaffiliated voters do not have a fundamental right to vote in primary elections. *Jones*, 530 U.S. at 573 n.5. Instead, they attempt to distinguish this matter from *Jones* by asserting that the State can adopt a nonpartisan primary like the one used in the State of Washington. (Ab12-Ab13; Ab43). However, while a nonpartisan primary would be constitutionally permissible, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 459 (2008), the Constitution does not mandate the use of such a system. *See Jones*, 530 U.S. at 573 n.5; *American Party of Texas*, 415 U.S. at 781.

Appellants also attempt to distinguish the present matter from *Jones* by asserting that there, "the State of California created the conflict by forcing political parties to associate with individuals" while here, "the State of New Jersey . . . created the conflict by forcing individual voters to associate with a political party." (Ab27). Thus, as appellants explain, the State cannot rely upon "precedent decided in favor of arguments made exclusively by political parties to protect their closed Candidate Nomination Proceedings[.]" (Ab28). However, this distinction is wholly illusory given that primaries do not serve just a "predominantly private purpose"; they are also "a public affair." *Jones*, 530 U.S. at 537 n.4. *See also Wene v. Meyner*, 98 A.2d 573, 576 (N.J. 1953) (observing that "[p]rimary elections are of public concern"). Therefore, "[i]n addition to protecting the associational rights of

party members, a state has a more general, but equally legitimate interest in protecting the overall interest in protecting the overall integrity of the historic electoral process[,]" which includes preserving parties as viable and identifiable interest groups" and "insuring that the results of primary elections, in a broad sense, accurately reflect the voting of party members." *Nader*, 417 F. Supp. at 845. *See also Clingman*, 544 U.S. at 595 (citing *Storer v. Brown*, 415 U.S. 724, 735 (1974); *Nader*, 417 F. Supp. at 845) (finding that Oklahoma's semi-closed primary system preserves the political parties "as viable and identifiable interest groups," enhances "the parties' electioneering and party-building efforts," and "guards against party raiding and 'sore loser' candidacies by spurned primary contenders.'").

Despite the centrality of the *Jones* decision to the matter at hand, appellants suggest that this court look to *United States v. Classic*, 313 U.S. 299, 318 (1941), for the proposition that the "fundamental right to a meaningful vote includes voting at the primary stage, where the primary is an integral part of the election process." (Ab20). However, the *Classic* decision should not be read as broadly as appellants suggest. In that case, the federal government prosecuted several Louisiana elections commissioners for allegedly falsifying ballots during a primary election. *Classic*, 313 U.S. at 307. The Supreme Court held that the Constitution affords Congress the power to regulate intraparty primaries and secures the right to have

one's "vote counted in both the general election and in the primary election, where the latter is part of the election machinery." *Id.* at 322. But the Court was careful to observe that the power to determine the class of qualified voters remained with the states. *Id.* at 311. *See also Trinsey*, 941 F.2d at 231 (recognizing the discretion afforded to the states in the Constitution to formulate a system for electing representatives). Appellants, thus, find little support in the *Classic* decision, which only "speaks to the constitutional protections that obtain once a primary vote is cast, [and] is silent as to who under state law has the right to cast one." *Balsam*, 2014 U.S. Dist. LEXIS 112709, at *11.

Appellants also contend that the State's electoral system dilutes the voting power of unaffiliated voters in comparison to party members in violation of the "one person, one vote" standard. (Ab22; Ab32-33; Ab35). In *Reynolds v. Sims*, 377 U.S. 533 (1964), the Supreme Court found an apportionment scheme that created a significant disparity between the numbers of voters in different legislative districts unconstitutional. *Id.* at 554-6, 568. In arriving at this conclusion, the Court reasoned that "an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with the votes of citizens living in other parts of the State." *Id.* at 568. Based upon the *Reynolds* decision, appellants argue that the State's electoral scheme "unconstitutionally dilutes the right of some citizens to vote compared to others[.]"

(Ab20; Ab39). While Appellee agrees with the basic proposition that the State cannot create a system in which the votes of one class are diluted, appellants err in applying it to the present context. In contrast to *Reynolds*, where voters were effectively disenfranchised by virtue of their state's apportionment schemes, unaffiliated voters in New Jersey possess the same opportunity to participate in the electoral process as party-members. Indeed, as the Supreme Court explained in *Jones*, a voter who feels disenfranchised because of a regulation that conditions participation in primary elections on party membership "should simply join the party." *Jones*, 530 U.S. at 58. That may put an unaffiliated voter "to a hard choice," *id.*, but it is not a state-imposed dilution of their voting power as was seen in *Reynolds*. As such, the State's electoral scheme does not disenfranchise appellants and their attempt to extend *Reynolds* to the present context strains any reasonable interpretation of that decision.

Unaffiliated voters, thus, do not have a fundamental right to vote in primary elections. But even if N.J. Stat. Ann. § 19:23-45 was found to burden appellants' rights, which Appellee does not concede, the burden is at most *de minimis* and does not warrant strict scrutiny. *Balsam*, 2014 U.S. Dist. LEXIS 112709, at *13. "Many electoral regulations, including voter registration generally, require that voters take some action to participate in the primary process." *Clingman*, 544 U.S. at 593. For instance, in *Rosario v. Rockefeller*, 410 U.S. 752, 760-62 (1973), the

Supreme Court upheld a requirement that voters change their party affiliation eleven months in advance of the primary election they seek to vote in. When compared against this precedent, the voter declaration scheme in N.J. Stat. Ann. § 19:23-45 surely passes constitutional muster as it only requires an individual who has previously voted in a primary to declare his or her new party affiliation fifty-five days before the primary election.

Therefore, because N.J. Stat. Ann. § 19:23-45 is, at most, a minimal burden on the ability of unaffiliated voters to participate in the primary process, the State's important regulatory interests should suffice to justify to the regulation. *Clingman*, 544 U.S. at 581. To that end, the State need not make a "particularized showing" articulating its interests. *Council of Atl. Political Parties*, 179 F.3d at 78. It is enough that the State has a legitimate interest in protecting the overall integrity of the historic electoral process as well as the associational rights of political associations, maintaining ballot integrity, avoiding voter confusion, and ensuring electoral fairness. *Id.* at 80 (holding that where "the statute is justified by important and legitimate interests such as political stability, a fair electoral process, and voter education, those interests alone are sufficient"); *see also Ray v. Blair*, 343 U.S. 214, 221, 222 (1952); *Nader v. Schaer*, 417 F. Supp. at 848; *Lesniak v. Budzash*, 626 A.2d 1073, 1080-81 (N.J. 1993); *Council of Alternative Political Parties v. Div. of Elections*, 781 A.2d 1041, 1052 (N.J. App. Div. 2001).

Accordingly, the District Court properly upheld N.J. Stat. Ann. § 19:23-45 as a reasonable, nondiscriminatory regulation of the electoral process that fully comports with the guarantees of the First Amendment.

## POINT II

### APPELLANTS' EQUAL PROTECTION CLAIM FAILS BECAUSE APPELLANTS ARE NEITHER MEMBERS OF A SUSPECT CLASS NOR DO THEY ENJOY A FUNDAMENTAL RIGHT TO PARTICIPATE IN PRIMARY ELECTIONS.

The District Court also correctly found that appellants' Equal Protection challenge fails as N.J. Stat. Ann. § 19:23-45 is subject only to rational basis review, which it survives, because appellants are neither members of a suspect class nor enjoy a fundamental right to vote in primary elections.

The Equal Protection Clause is essentially a directive that all individuals similarly situated should be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). "The state's creation of a classification is not 'per se unconstitutional or automatically subject to heightened scrutiny.'" *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)). Courts will, as a result, uphold a classification "so long as it bears a rational relation to some legitimate end" and it neither burdens a fundamental right nor targets a suspect class. *Id.* Therefore, absent "invidious discrimination," statutes may create many classifications, which

do not offend constitutional principles. *Am. Party of Tex.*, 415 U.S. at 781) (citing *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963)).

Appellants, notably, do not allege that they are members of a suspect class. While they do assert that there is a fundamental right to vote in primaries, (Ab19-Ab21), there is, in fact, no constitutional right to participate in primary elections. *Jones*, 530 U.S. at 573 n.5; *Duke v. Smith*, 784 F. Supp. 865, 872 (S.D. Fl. 1992) (citing *Consumer Party v. Davis*, 633 F. Supp. 877, 888 (E.D. Pa. 1986), *aff'd*, 15 F.3d 1096 (11th Cir. 1994).

Moreover, "'in facilitating the effective operation of [a] democratic government, a state might reasonably classify voters or candidates according to political affiliations.'" *Clingman v. Beaver*, 544 U.S. 581, 594 (*quoting Nader*, 417 F. Supp. at 845-46). Therefore, a closed primary does not result in "invidious discrimination" that would offend the Constitution. *Nader* 417 F. Supp. at 845-46.

Appellants, nevertheless, suggest that it is now time for this court to reexamine "what kinds of electoral systems pass constitutional muster[.]" (Ab32). In making this argument, appellants cite *Harper v. Virginia State Board of Elections* for the proposition that "[n]otions of what constitutes equal treatment for purposes of the Equal Protection Clause *do* change." 383 U.S. 663, 670 (1966). In *Harper*, the Supreme Court recalled that in 1896, it had held that laws "providing for separate public facilities for white and Negro citizens did not deprive the latter

17

of equal protection and treatment that the Fourteenth Amendment commands[,]" but that then, in 1954, it repudiated its earlier finding. *Id*. at 669-70 (citing *Brown v. Bd. of Educ.*, 347 U.S. 483, 492 (1954); *Plessy v. Ferguson*, 163 U.S. 537 (1896). Thus, it is certainly within the province of the Supreme Court to reevaluate its earlier holdings. *Harper*, 383 U.S. at 669-70. However, precedents "set by higher courts . . . are conclusive on the lower courts, and leave to the latter no scope for independent judgment or discretion." *Allegheny General Hospital v. NLRB*, 608 F.2d 965, 970 (3d Cir. 1979). As such, the Supreme Court's pronouncement in *Clingman* that "a state might reasonably classify voters or candidates according to political affiliations" remains binding upon this court.

Accordingly, N.J. Stat. Ann. § 19:23-45 is subject only to rational basis review because appellants are neither members of a suspect class nor enjoy a fundamental right to vote in primary elections. Therefore, this court should affirm because the regulation survives rational basis review due to the State's legitimate interest in protecting the electoral process.

## POINT III

### THE ELEVENTH AMENDMENT PROHIBITS APPELLANTS' STATE LAW CLAIMS IN THEIR ENTIRETY.

It is well-recognized that the states, state agencies and state officials acting in their official capacity cannot be sued under the principles of sovereign immunity

and the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69-71 (1989). "[T]he states' immunity from suit is a fundamental aspect of the sovereignty which the states enjoyed before the ratification of the Constitution, and which they retain today." *Alden v. Maine*, 527 U.S. 706, 712-13 (1999) (citations omitted).

The Eleventh Amendment to the United States Constitution makes explicit reference to the states' immunity from suit:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

> [U.S. Const. amend. XI.]

This immunity extends to state agencies and state officers who act on behalf of the state, *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997), and bars recovery in suits brought pursuant to 42 U.S.C. §1983. *Will v. Michigan Dep't of State Police*, 491 U.S. at 64.

Although the Eleventh Amendment does not bar appellants from bringing suit for prospective injunctive relief, *Ex Parte Young*, 209 U.S. 123 (1908), "State officials are immune from suits in federal court based on violations of state law, including suits for prospective injunctive relief under state law, unless the state waives sovereign immunity." *Pennhurst State Sch. & Hosp. v. Halderman*, 465

U.S. 89, 106 (1984); *Major Tours, Inc. v. Colorel*, 720. F. Supp. 2d 587, 602 (D.N.J. 2010). Moreover, the supplemental jurisdiction statute, 28 U.S.C. § 1367, does not authorize District Courts to exercise jurisdiction over claims against non-consenting States. *Raygor v. Regents of the University of Minnesota*, 534 U.S. 533, 541 (2002); *see also Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 405 (D.N.J. 2008) (acknowledging that "Supreme Court has stated unequivocally that § 1367(a)" does not override State's sovereign immunity).

In their Complaint, appellants allege that N.J. Stat. Ann. § 19:45-1 violates the New Jersey Constitution by appropriating public funds to cover the expenses that result from primary elections, which appellants suggest serve only a private purpose. (*Id.* at Docket Entry No. 1, ¶¶ 67-72). However, as an initial matter, the Supreme Court of New Jersey had held that "[p]rimary elections are of public concern." *Wene*, 98 A.2d at 576. Therefore, appellants' challenge to N.J. Stat. Ann. § 19:45-1 fails on the merits. But, significantly, this court is also without jurisdiction to entertain appellants' challenge to N.J. Stat. Ann. § 19:45-1 because their claim was brought pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367, and the State has not waived its sovereign immunity. (PACER, Civil Action No. 14-1388, Docket Entry Nos. 67-72). Consequently, appellants cannot invoke federal jurisdiction over their challenge to N.J. Stat. Ann. § 19:45-1

because this claim remains distinct from their federal claims, and as such, is barred by the State's entitlement to Eleventh Amendment immunity.

Accordingly, this court should affirm.

## CONCLUSION

For the foregoing reasons, this court should affirm the District Court's Order granting appellee's motion to dismiss.

Respectfully submitted,

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:    s/ Eric S. Pasternack
Eric S. Pasternack
Deputy Attorney General


Date:  December 3, 2014

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I certify that I am an attorney in good standing of the bar of the Third

Circuit.

Dated: December 3, 2014                  /s/ Eric S. Pasternack
                                          Eric S. Pasternack
                                          Deputy Attorney General
                                          R.J. Hughes Justice Complex
                                          P.O. Box 93
                                          Trenton, New Jersey 08625-0112
                                          Eric.Pasternack@dol.lps.state.nj.us
                                          (609) 984-4863
                                          N.J. Bar No. 1513-2011

## **CERTIFICATION OF COMPLIANCE WITH RULE 32(a)**

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a monospaced typeface using Microsoft Word 2010 with 12 characters per inch in Times New Roman. I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,775 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: December 3, 2014

/s/ Eric S. Pasternack
Eric S. Pasternack
Deputy Attorney General
R.J. Hughes Justice Complex
P.O. Box 93
Trenton, New Jersey 08625-0112
Eric.Pasternack@dol.lps.state.nj.us
(609) 984-4863
N.J. Bar No. 1513-2011

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 31.1(c)</u>

I certify that the text of the paper copies of this brief and the text of the PDF version of this brief filed electronically with the Court today are identical. I further certify that prior to electronically filing this brief with the Court today it was scanned by McAfee VirusScan Enterprise 8.7.0i, a virus detection software, and found to be free from computer viruses.

Dated: December 3, 2014          /s/ Eric S. Pasternack                            
                                 Eric S. Pasternack
                                 Deputy Attorney General
                                 R.J. Hughes Justice Complex
                                 P.O. Box 93
                                 Trenton, New Jersey 08625-0112
                                 Eric.Pasternack@dol.lps.state.nj.us
                                 (609) 984-4863
                                 N.J. Bar No. 1513-2011